IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge


Civil Action No. 11-cv-02652-LTB-BNB

OAKLAND CONSTRUCTION COMPANY, INC.,

      Plaintiff,

v.

THE PHOENIX INSURANCE COMPANY, a Connecticut insurance company; THE TRAVELERS INDEMNITY COMPANY OF AMERICA, a Connecticut Insurance Company; ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Connecticut insurance company; ST. PAUL SURPLUS LINES INSURANCE COMPANY, a Connecticut insurance company; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut insurance company; EVEREST NATIONAL INSURANCE COMPANY, a New Jersey insurance company; and AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, a New Jersey insurance company,

      Defendants.

_____

ORDER
_____

      This case is before me on Defendants The Phoenix Insurance Company ("Phoenix"), The

Travelers Indemnity Company of America, St. Paul Fire and Marine Insurance Company, St.

Paul Surplus Lines Insurance Company ("St. Paul Surplus") and Travelers Property Casualty

Company of America's (collectively referred to as "Travelers") Motion for Summary Judgment

re: Choice of Law on Statutory Extra Contractual Claims [Doc # 96].  In their reply brief,

Travelers also asserted a motion to strike certain arguments and a supporting affidavit submitted

by Plaintiff Okland Construction Company, Inc. ("Okland") in its response to Travelers'

summary judgment motion.  The merits of Travelers' motion to strike shall be addressed in this

Order to the extent necessary for disposition of Travelers' summary judgment motion.

After consideration of the motion, all related pleadings, and the case file, I deny

Travelers' motion for summary judgment for the reasons set forth below.

## I.  Background

This litigation arises out of the case of *RiverGate Loft Condo. Ass'n v. RiverGate Loft

Partners LLC, et al.,* Case No. 10-CV-19 in the La Plata County District Court for the State of

Colorado (the "Underlying Case"), which in turn arose out of the construction of a residential/

commercial project in Durango, Colorado known as the RiverGate Loft Condominiums (the

"Construction Project").  Plaintiff Okland Construction Company, Inc. ("Okland") was the

construction manager and general contractor for the Construction Project and a defendant in the

Underlying Case.  Travelers provided a defense to Okland in the Underlying Case.  Prior to trial,

Okland agreed to settle the Underlying Case for $11,500,000.  Travelers paid $4,000,000 of the

settlement amount, and Okland paid the remaining $7,500,000.

Okland is a corporation authorized to do business in Colorado with its principal place of

business in Salt Lake City, Utah and offices in Arizona, Colorado, and Utah.  Phoenix issued

commercial general liability policy number DT-CO-0351L695-PHX-09 with a policy period of

April 1, 2009 to April 1, 2010 (the "CGL Policy") to Okland.  St. Paul Surplus issued

professional liability policy number QC0550832 with a policy period of April 1, 2009 to April 1,

2010 (the "PL Policy") to Okland.  Okland relied upon the expertise of Arnett Insurance

Services, LLC ("Arnett") in procuring the CGL Policy and the PL Policy.  Okland received the

CGL Policy in Utah and paid all premiums on this policy out of its Salt Lake City office.

In its Complaint, Okland asserts claims against Travelers for breach of contract; bad faith

breach of insurance contract based, in part, on Travelers' alleged unfair claims settlement

2

practices under C.R.S. § 10-3-1104(1)(h); violation of C.R.S. § 10-3-1115 with a corresponding

request for attorney fees and two times the covered benefit pursuant to C.R.S. § 10-3-1116; and

declaratory relief.  By the motion, Travelers seeks the dismissal of Okland's claims predicated

on Colorado statutes on the basis that this case is governed Utah law pursuant to C.R.S. § 10-4-

1404.  In the alternative, Travelers argues that C.R.S. §§ 10-3-1115 & 1116 are inapplicable

under the facts and circumstances of this case.

## II.  Standard of Review

The purpose of a summary judgment motion under Rule 56 is to assess whether trial is

necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Rule 56 provides that

summary judgment shall be granted if the pleadings, depositions, answers to interrogatories,

admissions, or affidavits show that there is no genuine issue of material fact and the moving

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The non-moving party

has the burden of showing that there are issues of material fact to be determined.  *Celotex Corp.

v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, interrogatories, and admissions on file together with affidavits, if any, which it

believes demonstrate the absence of genuine issues for trial.  *Celotex*, 477 U.S.  at 323;  *Mares v.

ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).  Once a properly supported

summary judgment motion is made, the opposing party may not rest on the allegations contained

in his complaint, but must respond with specific facts showing the existence of a genuine factual

issue to be tried.  *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P.

56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III. Analysis

### A. Applicability of C.R.S. § 10-4-1404

Section 10-4-1404, C.R.S., provides:

> Where the exempt commercial policyholder operates in more than one state, the policy may include provisions within the insurance contract that determine disputes arising from claims handling and procedures, cancellation of the policy, or nonrenewal of the policy, which disputes shall be governed by the state with the largest percentage of premiums charged under the policy.

Travelers and Okland's first dispute regarding the applicability of this statute is whether a covered policy must have a dispute resolution provision in order to come within the purview of Section 10-4-1404. Okland argues that Section 10-4-1404's initial reference to dispute resolution provisions means that its choice of law provision only applies when such provisions are included in a covered policy. Travelers argues that the statute's use of the word "shall" in its choice of law provision means that this provision applies regardless of whether the covered policy includes a dispute resolution provision. Guided by the plain language of Section 10-4-

1404, I agree with Travelers that the applicability of this statute is not dependent on the inclusion of a dispute resolution provision in the covered policy.

Travelers and Okland next dispute whether Okland is an "exempt commercial policyholder" within the meaning of Section 10-4-1404.  In this regard, the parties agree that the applicable definition is that set forth in Colorado's insurance regulations at 3 CCR 702-5, Section 4(C):

> Exempt "commercial policyholder" means any person who applies for or procures any kind of Type II insurance, except any purchaser of title insurance, *through the use of a risk manager employed or retained by such person,* and who meets at least one of the following qualifications ....

(emphasis added).  "Risk manager" is defined  Colorado's insurance regulations at 3 CCR702-5, Section 4(F) as:

> [A]n employee of the exempt commercial policyholder, or a third-party consultant retained by the policyholder who provides skilled services in loss prevention, loss reduction, or risk and insurance coverage analysis, and the purchase of insurance, and who possesses at least one of the following credentials ....

Okland disputes that it qualifies as an "exempt commercial policyholder" on the basis that it does not have a "risk manager" on staff and that it only used Arnett only as an insurance broker that provided no risk management assessment, services, or advice despite evidence presented by Travelers that Arnett holds itself out, in part, as an expert in risk management.  To support Arnett's limited role, Okland relies on the affidavit of John McEntire, Okland's CFO responsible for administering Okland's insurance portfolio.

Travelers challenges Mr. McEntire's affidavit on the basis that he is attesting to matters outside his personal knowledge and that his affidavit is irrelevant in any event to the question of whether Arnett qualifies as a "risk manager" under the applicable definition.  Travelers

arguments are without merit.  In his role as CFO responsible for administering Okland's

insurance portfolio, Mr. McEntire has personal knowledge of the services Arnett provided to

Okland.  The nature of those services is directly relevant to the question of whether Okland

acquired insurance from Travelers through the use of a risk manager so as to qualify as an

"exempt commercial policyholder" for purposes of Section 10-4-1404.  Travelers' argument that

the specific nature of the services Arnett provided to Okland is irrelevant if Arnett can be

classified as a risk manager in the abstract represents an illogical reading of the statute that I

decline to adopt.  Accordingly, Mr. McEntire's affidavit raises material factual issues as to

whether Okland qualifies as an "exempt commercial policyholder" by obtaining insurance from

Travelers through the use of a "risk manager" that preclude a determination that Section 10-4-

1404 is applicable in this case.

In the event that Okland does qualify as an "exempt commercial policyholder," Travelers

and Okland further dispute the proper interpretation of the phrase "the state with the largest

percentage of premiums charged under the policy" in Section 10-4-1404's choice of law

provision.  Travelers argues that this language refers solely to where the premiums were billed

and paid, *i.e.* Utah, while Okland argues that this language refers to the location of the risks or

projects for which the premiums were charged, *i.e.* Colorado.

Neither party cites, and I have not found, any authority interpreting this same language.

A strict construction of Section 10-4-1404's choice of law provision might arguably favor

Travelers' interpretation.  However, strict construction should not be used to override common

sense and evident statutory purpose. *United States v. Brown,* 333 U.S. 18, 35-6 (1948).  *See also*

*Salt Lake City v. Western Area Power Admin.,* 926 F.2d 974, 984 (10th Cir. 1991) ("The most

fundamental guide to statutory construction is common sense.").  Here, common sense dictates that the legislature did not intend to ignore the location of the insured risks and mandate application of a state's laws based solely on the fact that all premium billings and payments are mailed to and from there.  Thus, even if Okland qualifies as an "exempt commercial policyholder" so that Section 10-4-1404 applies in this case, it does not follow that Utah law governs.

As Travelers  points out, however, it likewise does not follow that Colorado law applies based on the location of the risks insured under the CGL Policy.  Okland's argument that Colorado law would necessarily apply under Section 10-4-1404 ignores the PL policy and other insurance policies referenced in Okland's Complaint.  There are outstanding issues regarding the scope and subject matter of these other policies that preclude a determination that Colorado law applies under Section 10-4-1404 if this statute is applicable in this case.

Okland's response to Travelers' motion also argues that Colorado law is controlling in this case control because Colorado bears the most significant relationship to the underlying dispute.  This argument will be addressed in the context of other summary judgment motions specifically directed to this issue.

**B.  Applicability of C.R.S. §§ 10-3-1115 &1116**

Even if Okland can assert statutory claims under Colorado law, Travelers argues that it is entitled to judgment on Okland's claim under C.R.S. §§ 10-3-1115 & 1116 because these statutes do not apply under the circumstances of this case.  I disagree.

Section 10-3-1116(1) provides that

> A first-party claimant *as defined in section 10-3-1115* whose claim for payment
> of benefits has been unreasonably delayed or denied may bring an action in a
> district court to recover reasonable attorney fees and court costs and two times the
> covered benefit.

(emphasis added).  Section 10-3-1115(1)(b)(I) defines "first-party claimant" as "an individual,

corporation, association, partnership, or other legal entity asserting an entitlement to benefits

*owed directly to or on behalf of an insured* under an insurance policy." (emphasis added).

In arguing that Sections 10-3-1115 & 1116 do not apply to Okland's claims against it to

recover the $7.5 million Okland paid to settle the Underlying Case, Travelers principally relies

on *New Salida Ditch Co., Inc., v. United Fire & Casualty Ins. Co.,* 2009 WL 5126498 at *5 (D.

Colo. Dec. 18, 2009).  There, the district court concluded that these statutes provided no remedy

for claims based on an insurer's failure to provide coverage under an insured's general liability

policy.  In reaching this conclusion, the district court relied on the definitions of first and third-

party claims utilized by the Colorado Supreme Court in the context of common law bad faith

claims.  *Id.*  Sections 10-3-1115 & 1116 were intended, however, to create a new private right of

action in addition to and different from common law bad faith claims.  *Kisselman v. Am Fam*

*Mut. Ins. Co.,* 292 P.3d 964, 972 (Colo. App. 2011).  The definition relied on by the district court

in *New Salida* therefore has limited relevance to the extent that it conflicts with that expressly set

forth at Section 10-3-1115(b)(1).  I am likewise unpersuaded by *Gustafson v. Am. Fam. Mut. Ins.*

*Co.,* – F. Supp. 2d –, 2012 WL 4755357 at * 11 (D. Colo. Oct. 5, 2012), wherein the district

court cited *New Salida* without further discussion in support of its conclusion that Sections 10-3-

1115 & 1116 provided no remedy for an insured who alleged that his insurer breached its duty to

defend him in an underlying action.

Other district court cases from this jurisdiction support the conclusion that an insured under a liability policy is a first-party claimant for purposes of Sections 10-3-1116. *See D.R. Horton, Inc.-Denver v. Mountain States Mut. Casualty Co.,* 2013 WL 674032 at *1-2 (D. Colo. Feb. 25, 2013) (noting conflicting decisions interpreting "first-party claimant" for purposes of Sections 10-3-1115 & 1116 before concluding that insured was a "first-party claimant" vis-a-vis his liability insurer based on the plain language of Section 10-3-1115(1)(b)(I)); *D.R. Horton, Inc.-Denver v. Travelers Indem. Co.,* 2012 WL 5363370 at *11 (where claim under liability policy was brought by insured seeking to recover its defense fees and costs, "the Court finds it indisputable that the benefits are 'owed directly to or on behalf of [the] insured,' and thus is a first-party claim."); *Sterling Constr. Mgmt., LLC v. Steadfast Ins. Co.,* 2011 WL 3903074 at *12 (D. Colo. Sept. 6, 2011) (named insured seeking benefits payable directly to itself after indemnifying third-party could assert claim under Section 10-3-1116).

I note that an appeal directed to this very issue is currently pending before the Colorado Court of Appeals in the case of *Sresscon Corp. v. Rocky Mountain Structures, Inc.,* Case No. 09cv3252. In the interim, based on the plain language of Section 10-3-1115(1)(b)(I), I conclude that Okland is a "first-party claimant" for purposes of its claim against Travelers under Sections 10-3-1115 & 1116 to recover the amounts Okland itself paid to settle the Underlying Case plus additional amounts authorized by Section 10-3-1116. In deciding this issue, I make no findings or conclusions regarding the merits of Okland's claim under Sections 10-3-1115 & 1116 and do not consider Travelers' arguments addressed to the same.

**IV.  Conclusion**

For the reasons set forth above, IT IS HEREBY ORDERED that Travelers' Motion for

Summary Judgment re: Choice of Law on Statutory Extra Contractual Claims [Doc # 96] is

DENIED.  Additional consideration to choice of law issues will be given in the context of other

pending summary judgment motions.


Dated: May   23  , 2013 in Denver, Colorado.


                                        BY THE COURT:


                                        ___s/Lewis T. Babcock_____
                                        LEWIS T. BABCOCK, JUDGE