IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 11-cv-02652-LTB-BNB

OKLAND CONSTRUCTION COMPANY, INC.,

      Plaintiff,

v.

THE PHOENIX INSURANCE COMPANY, a Connecticut insurance company; THE
TRAVELERS INDEMNITY COMPANY OF AMERICA, a Connecticut Insurance Company;
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Connecticut insurance company;
ST. PAUL SURPLUS LINES INSURANCE COMPANY, a Connecticut insurance company;
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut insurance
company; EVEREST NATIONAL INSURANCE COMPANY, a New Jersey insurance
company; and AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE
COMPANY, a New Jersey insurance company,

      Defendants.

_____

ORDER
_____

      This case is before me on Defendants The Phoenix Insurance Company ("Phoenix"), The

Travelers Indemnity Company of America, St. Paul Fire and Marine Insurance Company, and

Travelers Property Casualty Company of America's (collectively referred to as "Travelers")

Motion for Partial Summary Judgment Against Cross-Claim Plaintiff Everest National Insurance

Company ("Everest") [Doc # 93].  By the Motion, seeks the dismissal of Everest's negligence

claim against Travelers.

      Oral argument would not materially assist in disposition of the motion.  After

consideration of the motion, all related pleadings, and the case file, I grant Travelers' motion for

the reasons set forth below.

## I.  Preliminary Matters

      Once again, Travelers has complicated the already unwieldy filings in this case by

presenting an unnecessary evidentiary motion in its reply brief.  *See* Doc # 138.  Specifically,

Travelers requests that I "strike all statements of fact in [the] response brief upon which Everest

relies" based upon Everest's alleged failure to provide a declaration from counsel or other representative of Everest authenticating the related documents and otherwise supporting these facts. This in turn has elicited further briefing by Everest and Travelers that the Court deems unnecessary and a waste of judicial resources.

The Court likewise deems it unnecessary for Everest to further burden the Court with additional paperwork authenticating documents that are not even in dispute. Furthermore, the Court is entirely capable of separating out properly supported statements of fact from unsupported subjective statements without 20 more pages of briefing in addition to the over 80 pages of briefing that the parties have already filed in relation to Travelers' motion directed to a single claim in the case. *See* Doc #s 93, 125 & 130. The Court urges Travelers, as well as all parties in this case, to exercise sound discretion and judgment in all future filings before this Court lest the Court be compelled to impose filing limitations on the parties.

## I. Background

This litigation arises out of the case of *RiverGate Loft Condo. Ass'n v. RiverGate Loft Partners LLC, et al.,* Case No. 10-CV-19 in the La Plata County District Court for the State of Colorado (the "Underlying Case"), which in turn arose out of the construction of a residential/ commercial project in Durango, Colorado known as the RiverGate Loft Condominiums (the "Construction Project"). Plaintiff Okland Construction Company, Inc. ("Okland") was the construction manager and general contractor for the Construction Project and a defendant in the Underlying Case.

Travelers issued a series of one-year commercial general liability ("CGL") policies to Okland covering the period from April 1, 2004 to April 1, 2010. Travelers also issued two professional liability ("PL") policies to Okland covering the periods of April 1, 2004 to April 1, 2005 and April 1, 2009 to April 1, 2010. Finally, Travelers issued two excess liability policies to Okland covering the period from April 1, 2005 to April 1, 2007. Everest issued excess liability policies to Okland covering the period from April 1, 2007 to April 1, 2010.

Travelers provided a defense to Okland in the Underlying Case subject to a full a reservation of rights.  In a reservation of rights letter dated February 9, 2010, Travelers referenced the five CGL policies covering the period from April 1, 2005 to April 1, 2010 in the subject line and quoted language from these policies.  In an updated reservation of rights letter dated March 21, 2011, Travelers added the CGL policy covering the period from April 1, 2004 to April 1, 2005 "to the policies under consideration for coverage" and quoted language from this policy.  Travelers' March 21, 2011 reservation of rights letter stated that

> The 2/9/10 reservation of rights letter addressed and summarized the coverage afforded by the [other CGL policies] and it is not our intent to reiterate those summaries here.  Travelers does add to the reservation of rights for these policies the following additional endorsements that were attached to them.

Travelers proceeded to quote additional language from the other CGL policies.

Everest first received notice of the claims against Okland in the Underlying Case on February 25, 2011.  Approximately two weeks later, Everest described its plan of action as follows:

> 1) Send claim acknowledgment - In progress 2) Obtain primary carrier information - In progress 3) Get primary carrier coverage position - In progress 4) investigate co-primary carriers for the insured, investigate co-excess carriers for the insured. 5) if potential exposure into the Everest policy, obtain defense counsel information and communicate with them. 6) if coverage issues for the primary carrier, contact their coverage counsel and advise them to communicate their coverage position. 7) if no exposure, send closing letter to the insured and close the file.

On or about March 28, 2011, Everest received copies of Travelers' reservation of rights letters dated February 9, 2010 and March 21, 2011.  After reviewing these letters, Everest concluded that Travelers was "defending and indemnifying the insured up to policy limits on the 04/05 policies."  Everest further noted that the other CGL policies included "Non Cumulation of Each Occurrence Limit of Liability" provisions whereby "[o]nce there is an occurrence triggered, then only the policy limits for that occurrence, even though continuing (sic)."  As a result, Everest noted that Travelers "will not indemnify for the later policy years including the years that [Everest is] the excess."  Everest decided to "send a closing letter to the insured

-3-

advising that there is no exposure in [Everest's] policy and close the file."

By letter dated March 29, 2011, Everest notified Okland that "there is no potential the Everest excess policy will be affected" by the claims asserted in the Underlying Case because "Travelers amended Reservation of Rights letter dated March 21, 2011 advises that the only policy term that would respond (sic) to an indemnity payment in this matter is the term of April 1, 2004 to April 1, 2005." Everest copied a representative of Travelers on the March 29, 2011 letter to Okland but there is no evidence that Everest otherwise communicated with Travelers regarding its decision to deny coverage and close the file or its interpretation of Travelers' reservation of rights letters. Neither Okland nor Travelers responded to Everest's March 29, 2011 letter, and Everest closed its file.

On July 20, 2011, approximately 4 months after closing its file, Everest received a letter that Okland's counsel sent to another excess liability insurer, Allied World Assurance Co. (U.S.), Inc. ("Allied"). This letter advised Allied of a two-day mediation scheduled for September 1- 2, 2011; a settlement demand from plaintiffs in the Underlying Case for over $32 million; defense counsel's opinion that Okland's possible exposure at trial was in the $10 to $12 million range; and the October 11, 2011 trial date in the Underlying Case. This letter further demanded that Allied attempt to settle the claims in the Underlying Case on behalf of Okland.

On August 4, 2011, Everest notified Allied that it would be following up with Travelers. Everest's notes also reflect that it advised Allied that, pursuant to the March 21, 2011 reservation of rights letter, Travelers was defending and indemnifying Okland under the 2004-2005 policy only which contained a first manifestation date exclusion and that Everest had placed a call to Travelers. Everest reopened its file but there is no evidence that Everest took any further action prior to the September 1-2, 2011 mediation.

On September 13, 2011, Everest discussed Okland's claim with Travelers and noted that Travelers advised that it "[had] non (sic) made a coverage year determination to date." Around this same time, Okland advised Travelers of coverage concerns that it had including that

"Travelers has, to date, not identified the policy year in which it believes coverage is triggered" causing "uncertainty amongst excess carriers ... concerning whether their respective excess policies are triggered."

Everest participated in a court ordered settlement conference on September 15, 2011 through an independent adjustor hired for this purpose.  At this settlement conference, Travelers offered to pay $1.4 million towards settlement of the Underlying Case.  No other party offered to pay money on behalf of Okland to settle the Underlying Case.

By letter dated September 30, 2011, counsel for Everest asked Travelers to identify which of Travelers' policies had been triggered by the claims in the Underlying Case so that Everest, along with other excess insurance carriers, could evaluate Okland's claims for coverage under its excess policies.  On October 3, 2011, counsel for Travelers responded:

> When you and I spoke previously, we had not yet ascertained which policy period was triggered by the Plaintiff's claims as it was not clear when damage first manifested.  Based upon all of the evidence we have reviewed in this case, we have since determined that the 2009 to 2010 policy is the policy at play here.
>
> The 2009 to 2010 policy was implicated because that is when Okland first received the Plaintiff's notice of claim in September of 2009 (sic).  Moreover, in its responses to various motions for summary judgment, the Plaintiff has argued that damage manifested in 2009.  As such, Okland has asked Travelers to tender its $1,000,000 in limits on the 2009-2010 policy and Travelers is willing to do so.  As such, the Everest policy limits of $10,000,000 will be implicated upon payment of Travelers' policy limits.

In a mediation held on October 7, 2011 attended by counsel for Everest, Okland agreed to settle the Underlying Case for $11.5 million.  Travelers agreed to contribute $4 million towards the settlement amount that it contends consists of the $1 million limit under its 2009-2010 CGL policy and the $3 million limit under its 2009-2010 PL policy.  Okland, however, represented to Everest that Travelers was making $4 million contribution to the settlement amount "without requiring a release or attribution of funds to any particular policy or policy year."

The $11.5 million settlement of the Underlying Case was subject to a funding deadline of October 10, 2011.  On that date, Everest advised the parties it was "unable to commit" to provide funds for settlement by the deadline.  In a follow-up letter dated October 14, 2011, Everest

asserted that it had insufficient time between Travelers' October 3, 2011 letter identifying the 2009-2010 policy as the one applicable and the October 7, 2011 mediation to assess whether it agreed with Travelers' position as to the applicable policy despite other evidence that Everest had already determined that it disagreed with Travelers' position as of October 5, 2011. Everest's October 14, 2011 letter also noted its concerns that Travelers' position on coverage continued to change and requested further information from Okland.

On January 9, 2012, after receiving additional information from Okland, Everest advised Okland that it had investigated Okland's claim and concluded that coverage was not available to Okland under Everest's excess liability policies.

Everest has asserted a cross-claim against Travelers for negligence in which it alleges as follows:

> As the primary insurer, Travelers owed certain duties and had certain obligations to Everest, including the duty to provide Everest information that may trigger coverage under Everest's policies, the duty to provide Everest information regarding what policy or policies issued by Travelers were triggered by the facts discovered in the [Underlying Case] and the duty to keep Everest informed of developments in the [Underlying Case] that might potentially exhaust Travelers' policy limits under a policy that may trigger coverage under an Excess Commercial Liability Policy issued by Everest.
>
> Through its acts and omissions, including, but not limited to failing to provide Everest with Travelers' decision regarding what policy or policies were triggered and the basis for its decision to pay under the 2009-2010 Travelers CGL Policy rather than a policy or policies issued by Travelers to Okland for earlier policy terms, Travelers breached its duties owed to Everest.
>
> As a result of Travelers (sic) breach of its duties and obligations to Everest, Everest has incurred damages in an amount to be proven at trial.

*See* Doc # 61, ¶¶ 67-69.

## II.  Standard of Review

The purpose of a summary judgment motion under Rule 56 is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The non-moving party

has the burden of showing that there are issues of material fact to be determined.  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, interrogatories, and admissions on file together with affidavits, if any, which it

believes demonstrate the absence of genuine issues for trial.  *Celotex*, 477 U.S.  at 323;  *Mares v.*

*ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).  Once a properly supported

summary judgment motion is made, the opposing party may not rest on the allegations contained

in his complaint, but must respond with specific facts showing the existence of a genuine factual

issue to be tried.  *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P.

56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary

judgment is proper and there is no need for a trial.  *Celotex*, 477 U.S. at 323.  The operative

inquiry is whether, based on all documents submitted, reasonable jurors could find by a

preponderance of the evidence that the plaintiff is entitled to a verdict.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250 (1986).  However, summary judgment should not enter if,

viewing the evidence in a light most favorable to the nonmoving party and drawing all

reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party.

*Anderson*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III. Analysis

Other pending dispositive motions are directed to the question of whether Colorado or

Utah law is applicable in this case.  Under both Colorado and Utah law, however, the elements

of a negligence claim are (1) the existence of a legal duty to the plaintiff; (2) breach of that duty

by the defendant; (3) injury to the plaintiff; and (4) causation.  *Raleigh v. Performance Plumbing*

*& Heating,* 130 P.3d 1011, 1015 (Colo. 2006); *Williams v. Melby,* 699 P.2d 723, 726 (Utah

1985).  The choice of law issue therefore need not be determined prior to resolving the issues raised by Travelers with respect to Everest's negligence claim.

Travelers argues that Everest's negligence claim against it fails as matter of law because (1) Travelers owed no duty to Everest; (2) if Travelers did owe a duty to Everest, it complied with such duty; (3) if Travelers breached any duty to Everest, no harm resulted; and (4) there is no evidence of causation.

## A.  Existence of a Legal Duty

Travelers argues that neither Colorado nor Utah has recognized a direct duty owed by a primary insurer to an excess insurer and that strong policy considerations weigh against allowing such claims.  *See Hocker v. New Hampshire Ins. Co.,* 922 F.2d 1476, 1489 (10th Cir. 1991) (declining to allow excess insurer to recover from primary insurer in direct cause of action under Wyoming law in part because such recovery would decrease excess insurer's incentive to fulfill its contractual obligations to insured).  Travelers further notes that while both Colorado and Utah recognize claims by excess insurers against primary insurers for equitable subrogation, such a claim has not been asserted here and would be unavailable to Everest under the facts of this case. *See State Farm Mut. Auto Ins. Co. V. Northwestern Nat'l Ins. Co.,* 912 P.2d 983, 986 (Utah 1996) (elements of equitable subrogation claim by excess insurer against primary insurer include payment by the excess insurer to protect its rights or interests); *Unigard Mut. Ins. Co. v. Mission Ins. Co.,* 907 P.2d 94, 99 (Colo. App. 1994) ("... excess insurer is entitled to recover from the primary insurer the amount paid by it which, under the primary policy, should have been paid by the primary insurer ...").

In response, Everest concedes that it cannot assert a claim for equitable subrogation under the facts of this case but argues that case law from other jurisdictions supports a finding that Travelers owed Everest a direct duty of care based on the foreseeable risk of harm to it from the mishandling of Okland's claim by Travelers.  *See e.g. Hartford Accident & Indem. Co. v. Michigan Mut. Ins. Co.,* 93 A.D.2d 337, 462 N.Y.S.2d 175, 178 (N.Y.A.D. 1983), *aff'd* 463

N.E.2d 608 (N.Y. 1984) (primary insurer, to whom the defense of the underlying action had been entrusted, owed excess insurer direct duty "to exercise good faith in handling the defense and to safeguard the rights and interests of the excess carrier").  Everest also argues that public policy considerations support allowing such claims.  *See Schal Bovis, Inc. v. Cas. Ins. Co.,* 314 Ill. App. 3d 562, 732 N.E.2d 1082, 1091- 92 (Ill. App. 1999) (allowing excess insurer that paid excess verdict to pursue cause of action against primary insurer for negligently or in bad faith failing to settle claim for policy limits would promote judicial economy by encouraging fair and reasonable settlements).

In resolving this question of law, I reject Everest's request that I certify this issue to the Colorado Supreme Court since it remains disputed whether Colorado law governs in this case. Instead, I am guided by "other state court decisions, federal decisions, and the general trend and weight of authority." *Commerce Bank, N.A. v. Chrysler Realty Corp.,* 244 F.3d 777, 780 (10th Cir. 2001) (*quoting Farmers Alliance Mut. Ins. Co. V. Salazar,* 77 F.3d 1291, 1295 (10th Cir. 1996)).

The cases from other jurisdictions cited by Everest are distinguishable from this case and do not support the existence of broad duties owed by a primary insurer to an excess insurer. *See John Crane, Inc. V. Admiral Ins. Co.,* 2006 WL 1010495 *18-19 (Ill. Cir. Ct. Apr. 12, 2006) (reconciling two seemingly contradictory opinions on existence of duty by Illinois appellate courts on the basis that whether primary insurer owes duty to umbrella or excess insurer is determined on case-by-case basis to be based on actions of the primary insurer and the insured). These cases are also arguably at odds with the only Tenth Circuit case cited by the parties on this issue. *See Hocker,* 922 F.2d at 1488 (under circumstances present, excess insurer did not have a direct cause of action against primary insurer under Wyoming law).  Furthermore, the national trend and weight of authority do not recognize a direct duty running from the primary to the excess insurer. *See PHICO Ins. Co. v. Aetna Casualty & Surety Co. of Amer.,* 93 F.Supp.2d 982, 989 (S.D. Ind. 2000) (citing few cases suggesting primary insurer owes direct duty of care to

excess insurer but noting that majority of jurisdictions define duty as derivative of that owed to the insured).

Imposition of a direct duty from Travelers to Everest is also not supported by general negligence principles.  Under Colorado law, a court considers many factors in determining whether a duty should be recognized including "(1) the risk involved, (2) the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, (3) the magnitude of the burden of guarding against injury or harm, and the (4) the consequences of placing the burden upon the actor." *HealthONE v. Rodriguez ex rel. Rodriguez,* 50 P.3d 879, 888 (Colo. 2002).  The essential inquiry though is one of fairness.  *Id.*  Utah law similarly recognizes a number of relevant factors including (1) the legal relations between the parties; (2) foreseeability; (3) likelihood of injury; (4) the magnitude of the burden of guarding against injury and the consequences of placing that burden on the defendant; and (5) general policy considerations. *AMS Salt Indus., Inc. v. Magnesium Corp. of Amer.,* 942 P.2d 315, 321 (Utah 1997).  Under both Colorado and Utah law, the question of whether the defendant owes a duty to the plaintiff is a question of law to be determined by the court.  *HealthONE, supra; AMS Salt Indus,* 942 P.2d at 320.

Here, Everest was aware of the claims in the Underlying Case, the potential liability of Okland well in excess of limits under the primary policies issued by Travelers, and Travelers' position regarding coverage under its primary policies.  Nonetheless, Everest initially made virtually no effort to investigate or resolve Okland's claim based on an obviously incorrect interpretation of Travelers' position regarding coverage.  Even after it became aware that its interpretation of Travelers' coverage position was incorrect, Everest continued to make little effort to investigate or resolve Okland's claims.  Under these facts and circumstances, I conclude that there is no legal justification to hold Travelers responsible for Everest's failure to protect its own interests.  In particular, I note that this is not a situation where Travelers had the opportunity to settle the Underlying Case without exposing Everest to potential liability under its excess

-10-

policies or where Everest paid any money to defend or resolve the Underlying Case. *Compare Schal Bovis, supra.*

Because I conclude that Travelers did not owe Everest a direct duty of care as a matter of law, judgment shall enter in favor of Travelers on Everest's negligence claim.

**B.  Other Elements of Negligence Claim**

Having already concluded that Travelers did not owe Everest a direct duty of care as a matter of law, I need not analyze Travelers' additional arguments that Everest cannot establish breach of any such duty, injury, or causation.  I nonetheless note that Travelers' arguments that Everest is unable to establish these other elements of its negligence claim are persuasive. Among other things, Everest's failure to tender any funds to or on behalf of Okland in relation to the Underlying Case to date and ongoing position that there is no coverage under its excess policies despite clarification from Travelers some time ago as to the policy year it considered applicable cast serious doubt on Everest's ability to establish injury or causation.

**IV.  Conclusion**

For the reasons set forth above, IT IS HEREBY ORDERED that

1.  Travelers' Motion for Partial Summary Judgment Against Everest ("Everest") [Doc # 93] is GRANTED; and

2.  Judgment shall enter in favor of Travelers and against Everest on Everest's cross-claim for negligence.


Dated: July   26  , 2013 in Denver, Colorado.

BY THE COURT:


 s/ Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE

-11-
