IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 11-cv-02652-LTB-BNB

OKLAND CONSTRUCTION COMPANY, INC.,

    Plaintiff,

v.

THE PHOENIX INSURANCE COMPANY, a Connecticut insurance company; THE TRAVELERS INDEMNITY COMPANY OF AMERICA, a Connecticut Insurance Company; ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Connecticut insurance company; ST. PAUL SURPLUS LINES INSURANCE COMPANY, a Connecticut insurance company; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut insurance company; EVEREST NATIONAL INSURANCE COMPANY, a New Jersey insurance company; and AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, a New Jersey insurance company,

    Defendants.

___

ORDER
___

This case is before me on Defendants The Phoenix Insurance Company, The Travelers Indemnity Company of America, St. Paul Fire and Marine Insurance Company, St. Paul Surplus Lines Insurance Company, and Travelers Property Casualty Company of America's (collectively referred to as "Travelers") and Defendant Everest National Insurance Company's ("Everest") Combined Motion for Summary Judgment Regarding Choice of Law [Doc # 240]. By this motion, Travelers and Everest seek a determination that the claims asserted in this case are governed by Utah law. By separate summary judgment motion, Plaintiff Okland Construction Company, Inc. ("Okland") seeks, among other things, a determination that the claims asserted in this case are governed by Colorado law. *See* Doc # 241. Thus, for purposes of judicial

economy, I consider whether Utah or Colorado law is controlling in this case.

After consideration of the motion, all related pleadings, and the case file, I deny Travelers and Everest's motion for the reasons set forth below and conclude that the claims asserted in this case are governed by Colorado law.

## I.  Background

This litigation arises out of the case of *RiverGate Loft Condo. Ass'n v. RiverGate Loft Partners LLC, et al.,* Case No. 10-CV-19 in the La Plata County District Court for the State of Colorado (the "Underlying Case"), which in turn arose out of the construction of a residential/ commercial project in Durango, Colorado known as the RiverGate Loft Condominiums (the "Construction Project").  Okland was the construction manager and general contractor for the Construction Project and a defendant in the Underlying Case.

Okland is a Utah corporation authorized to do business in Colorado with its principal place of business in Salt Lake City, Utah and offices in Arizona, Colorado, and Utah.  Travelers is a Connecticut company with its principal place of business in Connecticut.  Everest is a New Jersey company with its principal place of business in New Jersey.  Both Travelers and Everest are licensed to transact business in Colorado.

Travelers issued a series of one-year commercial general liability ("CGL") policies to Okland covering the period from April 1, 2004 to April 1, 2010.  Travelers also issued two professional liability ("PL") policies to Okland covering the periods of April 1, 2009 to April 1, April 1, 2011.  Finally, Travelers issued three excess liability policies to Okland covering the period from April 1, 2004 to April 1, 2007.  Everest issued three excess liability policies to Okland covering the period from April 1, 2007 to April 1, 2010.  All of these policies were

issued to Okland at its office in Salt Lake City, Utah. All premiums on these policies were paid by Okland from its office in Salt Lake City, Utah.

Travelers provided a defense to Okland in the Underlying Case. Prior to trial, Okland agreed to settle the Underlying Case for $11,500,000. Travelers paid $4,000,000 of the settlement amount, and Okland paid the remaining $7,500,000 via check listing the address for Okland's office in Salt Lake City, Utah and made payable to a Colorado law firm.

In its Complaint, Okland asserts claims against Travelers and Everest for breach of contract; bad faith breach of insurance contract; violation of C.R.S. § 10-3-1115 with a corresponding request for attorney fees and two times the covered benefit pursuant to C.R.S. § 10-3-1116; and declaratory relief. Though Travelers and Everest's motion does not specifically address Okland's claim for declaratory relief, this claim is derivative of Okland's breach of contract claim and therefore subject to the same choice of law analysis.

## II. Standard of Review

The purpose of a summary judgment motion under Rule 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III. Analysis

**A. Choice of Law on Breach of Contract Claim**

The choice of law analysis with respect to Okland's claim for breach of contract first requires a determination of whether Colorado and Utah law differ on the question of whether "rip and tear" costs, *i.e.* costs associated with the rip and tear of nondefective work in order to

get to and repair defective work, are covered under standard CGL policies. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.,* 946 F. Supp. 861, 866 (D. Colo. 1996) (choice of law decision will not be made in the absence of an outcome-determinative conflict between potentially applicable laws).

In *Greystone Constr., Inc. V. Nat'l Fire & Marine Ins. Co.,* 661 F.3d 1272 (10th Cir. 2011), the Tenth Circuit applied Colorado law in analyzing whether damage to homes resulting from soil expansion that caused the foundation to shift constituted an "occurrence" under two of the builder's CGL policies so as to trigger a duty to defend. The Tenth Circuit concluded that the Colorado Supreme Court would construe the term "occurrence" under standard form CGL policies "to encompass unforeseeable damage to nondefective property arising from faulty workmanship." *Id.* at 1282. The Tenth Circuit therefore held that "injuries flowing from improper or faulty workmanship constitute an occurrence so long as the resulting damage is to nondefective property, and is caused without expectation or foresight." *Id.* at 1284. The Tenth Circuit noted that the determination of whether the damage was foreseeable "ask[s] whether damages would have been foreseeable if the builder and his subcontractors had completed the work properly." *Id.* at 1285.

Applying this construction of the term "occurrence" to the facts and circumstances of the case, the Tenth Circuit further held that damage to the homes themselves, *i.e.* nondefective property, may have resulted from an unforeseen occurrence so as to trigger the duty to defend under the CGL policies but damage to the homes' soil-drainage and structural elements, *i.e.* defective property, did not. *Id.* at 1286 & 1289. The Tenth Circuit further explained the distinction between defective and nondefective property as follows:

5

> The defective-nondefective principle flows from recognition that the faulty workmanship, standing alone, is not caused by an accident - but that damage to *other* property caused by the faulty workmanship (including both the nondefective work product of the contractor and third-party property) is the result of an accident.

*Id.* at 1287.

In *Colorado Pool Sys., Inc. v. Scottsdale Ins. Co.,* — P.3d —, 2012 WL 5265981 (Colo. App. Oct. 25, 2012), *cert. granted,* 2013 WL 4714283 (Colo. Sept. 3, 2013), a panel of the Colorado Court of Appeals applied the Tenth Circuit's holding in *Greystone* and held that a CGL policy did not cover damage incurred in demolishing and replacing an improperly installed pool but did cover "rip and tear" work to nondefective third-party work including damage to a deck, sidewalk, retaining wall, and electrical conduits. The Colorado Supreme Court has granted certiorari in *Colorado Pool Sys.*, *see Colorado Pool Sys.,* 2013 WL 4714283 at *1, and Colorado law on CGL policy coverage for "rip and tear" costs therefore could soon be clarified. For now, however, *Greystone* provides the analytical framework for determining whether there is CGL policy coverage for such costs under Colorado law.

A comprehensive statement of Utah law on this issue can be found in *Cincinnati Ins. Co. v. AMSCO Windows,* 921 F. Supp. 2d 1226 (D. Utah 2013). There, the issue before the district court was whether damage caused by defective windows and/or defective window installation to other property including water damage to the carpet, padding, floors, walls, and ceilings of the residences and water marks at the soffit, corbels, sills, and walls" was an "occurrence" within the meaning of the CGL policies at issue. *Id.* at 1232-33 & 1253.

After noting that the term "occurrence" is to be broadly and liberally construed in favor of extending coverage to the insured, *id.* at 1241, the district court cited and summarized

6

numerous cases analyzing the meaning of this term including *Greystone*. *Id.* at 1241-60. Ultimately, the district court concluded that the Utah Supreme Court, if presented with the question, would hold that "where defective workmanship causes damage to property other than the work product itself, then such damage results from an accidental "occurrence" within the meaning of CGL policy language." *Id.* at 1260. The district court noted that this conclusion was supported by *Greystone* since there the Tenth Circuit noted "a strong recent trend in the case law interpreting 'occurrence' to encompass unanticipated damage to nondefective property resulting from poor workmanship." *Id.* at 1261 (*quoting Greystone,* 661 F.3d at 1282).

Thus, although the issue has not yet been addressed by either the Colorado or Utah Supreme Court, other courts in both states have predicted that they would similarly interpret the term "occurrence" as used in CGL policies. While neither *Greystone* nor *Cincinnati* specifically involved "rip and tear" costs, the same principles would be applied under both Colorado and Utah law in determining whether there was coverage for such costs under the applicable CGL policies. Without deciding the ultimate question of coverage then, I conclude that there is presently no conflict between Colorado and Utah law that requires a choice of law analysis with respect to Okland's claim for breach of contract. Accordingly, this claim, as well as Okland's claim for declaratory judgment, shall be governed by Colorado law. *See Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.,* 431 F.3d 1241, 1255 (10th Cir. 2005) (substantive law of the forum state governs in diversity action).

**B. Choice of Law on Extra Contractual Claims**

The choice of law analysis with respect to Okland's common law bad faith and statutory claims first requires a determination of whether Colorado and Utah law differ with respect to

these claims.  *See United Int'l Holdings, Inc., supra.*

Under C.R.S. § 10-3-1116(1), one whose claim for the payment of benefits under an insurance policy has been unreasonably delayed or denied may recover reasonable attorney fees, court costs, and two times the covered benefit.  There is no comparable Utah statute but Utah law recognizes a common law right to recover attorney fees on bad faith claims.  *See Campbell v. State Farm Mutual Auto. Ins. Co.,* 65 P.3d 1134, 1168 (Utah 2001), *rev'd on other grounds,* 538 U.S. 408 (2003).  In contrast, Colorado law does not recognize a common law right to recover attorney fees on bad faith claims.  *See Berhnhard v. Farmers Ins. Exch.,* 915 P.2d 1285 (Colo. 1996).  Under these circumstances, I am satisfied that there is a conflict between Colorado and Utah law that mandates a choice of law analysis with respect to Okland's extra contractual claims.

In determining what law applies to these claims, I apply Colorado's choice of law rules.  *Pepsi-Cola Bottling Co. of Pittsburg, Inc.,* 431 F.3d at 1255.  Colorado follows the "most significant relationship" approach in determining which law applies to tort actions.  *Boone v. MVM, Inc.,* 572 F.3d 809, 810-11 (10th Cir. 2009).  *See also Pham v. State Farm Mut. Auto. Ins. Co.,* 70 P.3d 567, 571 (Colo. App. 2003) (under Colorado law, claims for bad faith breach of insurance contract lie in tort).  This approach considers the following factors in determining which state has the most significant relationship :

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states in determination of the particular issue,

(d) the protection of justified expectations,

   (e) the basic policy underlying the particular field of law,

   (f) certainty, predictability and uniformity of result, and

   (g) ease in determination and application of the law to be applied.

*Id.* (*citing Restatement (Second) Conflict of Laws* §§ 6(2) & 145).  In considering these factors, I must also take the following contacts into account:

   (a) the place where the injury occurred,

   (b) the place where the conduct causing the injury occurred,

   (c) the domicile, nationality, place of incorporation and place of business of the parties, and

   (d) the place where the relationship, if any, between the parties is centered.

*Id.* (*citing Restatement (Second) Conflict of Laws* § 145(2)).

   Colorado has substantial connections to this case stemming from the fact that the insured risk is located here.  Okland's payment of the $7,500,000, though made from Utah, was the direct result of litigation and related settlement proceedings that took place in Colorado for the benefit of Colorado homeowners.  Both Okland's injury and the conduct giving rise to it were therefore centered in Colorado.

   Utah also has connections to this case since Okland is a Utah corporation with its principal place of business there.  In addition, the insurance contracts covering the Construction Project were entered into and maintained by Okland in Utah.  The policies did not, however, insure any risks located in Utah.  *See* Doc # 241, pp. 6-7.

In weighing Colorado and Utah's connections to the particular circumstances of this case, I note that Utah's connections are further removed and should therefore be accorded less weight. *See Restatement (Second) Conflict of Laws* § 145(2) (relevant contacts "are to be evaluated according to their relative importance with respect to the particular issue"). Utah's more remote connections to the circumstances of this case further lead me to conclude that Colorado has a greater interest in its outcome than Utah. Colorado's interest this case is further demonstrated by the fact that Colorado has enacted extensive laws, including C.R.S. §§ 10-3-1115 & 1116, to regulate insurance practices within its borders. Since Travelers and Everest are licensed to transact business in Colorado and in fact specifically insured risks located in Colorado, it was certainly foreseeable that they would be subject to Colorado law.

After consideration of the relevant factors under then, I conclude that Colorado has the most significant relationship to the issues involved in this case and that Okland's extra contractual claims shall therefore be governed by Colorado law. It follows that Okland's statutory claim under C.R.S. §§ 10-3-1115 & 1116 is not subject to dismissal on the basis that it is precluded by Utah law.

### IV. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

1. Travelers and Everest's Combined Motion for Summary Judgment Regarding Choice of Law [Doc # 240] is DENIED; and

2. The claims asserted in this case shall be governed by Colorado law.

Dated: March   6  , 2014 in Denver, Colorado.

                                                BY THE COURT:

                                                  s/Lewis T. Babcock
                                                LEWIS T. BABCOCK, JUDGE